[Civ. No. 12026.   First Dist., Div. One.   May 28, 1942.]

MEREDITH B. DAVIS et al., Appellants, v. CLARENCE GRIGSBY STROUD, Respondent.

John Oliver for Appellants.

Clarence Grigsby Stroud in pro. per., for Respondent.

BRAY, J. pro tem.—Appeal by plaintiff Meredith B. Davis from a judgment for defendant entered after demurrer sustained to the amended complaint, and appeal by Clarence Stroud Davis, an infant, from the order of the court denying his motion for the filing of a supplemental complaint. No brief was filed on this appeal upon behalf of respondent.

The history of the pleadings was as follows: A complaint was filed containing three counts. The first count was for support of the then unborn minor and confinement expenses for the plaintiff mother. It did not allege whether or not the plaintiff mother was unmarried at the time of conception, or at any time mentioned in the complaint. The second cause of action was for seduction. The only reference to plaintiff's status contained therein was "Plaintiff is unmarried, over the age of 21, and is chaste and virtuous." The third cause of action was for alleged breach of promise to marry, and contains no allegation as to plaintiff's marital status. The court sustained demurrers to all three causes of action; to the first, because there was no allegation as to whether the plaintiff was married or unmarried at any time set forth in the cause of action; to the second, because it interpreted the allegation "the Plaintiff is unmarried" as applying only to the time of the filing of the complaint, and because there was

no allegation therein as to her status at the times of the alleged seduction, and as to the third, because it nowhere appeared that the plaintiff was unmarried and free to enter into an agreement of marriage with the defendant. According to the memorandum ruling of the judge upon the demurrers to the amended complaint the court stated at the time of sustaining the demurrers to the original complaint, that in amending plaintiff must meet the question of whether or not the plaintiff was an unmarried woman at all the times mentioned in each of the three causes of action.

Thereafter plaintiff filed her amended complaint, again containing three causes of action. The first cause of action again was for the support of the still unborn child and confinement expenses for plaintiff mother. To meet the court's objection to the first complaint, the plaintiff merely alleged on the subject of her marital or non-marital status, ''Plaintiff is an unmarried woman.'' The court sustained a demurrer to this cause of action upon the ground that the fact that plaintiff was unmarried at the time of the filing of the suit gave no information as to the question of whether or not she was married to either the defendant or some one other than the defendant at the time of conception, and therefore, might be bound by the presumption that a child born during wedlock is presumed to be the child of the husband. The second cause of action, was like that in the original complaint, one for seduction. To meet the original objection, paragraph one of the first cause of action which stated ''Plaintiff is an unmarried woman'' was incorporated by reference into this second cause of action, and then it is alleged ''Plaintiff is at all times referred to in this said cause of action, unmarried, over the age of 21, and is chaste and virtuous.'' Again ruling that this statement referred to the time of filing the complaint rather than to the time of the alleged seduction, the court sustained a demurrer to this cause of action. The third cause of action, like that in the first complaint, was for breach of promise to marry. Here, upon the question involved, the only allegation was the incorporation by reference from the first cause of action of the allegation ''Plaintiff is an unmarried woman.'' Upon demurrer the court held that this did not disclose her status at the time of the alleged promise or promises to marry, and sustained the demurrer upon that ground. At the argument of the demurrer to the second amended complaint, the court, according to its

memorandum ruling, was informed by counsel for the plaintiff that he was not required in his pleadings to meet this question of plaintiff's marital status other than as he had set it forth in the amended complaint. Apparently, because of that position taken by counsel the court in sustaining the demurrers to the amended complaint, sustained them without leave to amend.

Later, leave was granted to reargue the case and the order sustaining the demurrers without leave to amend was set aside so as not to prejudice plaintiff's right of appeal. On reargument, plaintiff, with permission, struck from the second cause of action the incorporation therein of paragraph III and IV of the first cause of action. Apparently, this was done to escape the confusion caused by the allegation that the seduction for which plaintiff asked damages occurred on or about June 17, 1939, whereas it appeared from the expunged paragraphs that plaintiff and defendant had been cohabiting together since December, 1938, and that plaintiff had become pregnant through intercourse with defendant in the month of March, 1939. Upon the reargument, the court sustained the demurrers to the first and third causes of action without leave to amend, and to the second cause (seduction) with leave to amend, stating, ''The second cause of action alleges that the plaintiff was unmarried at the times referred to in that cause of action. It is not clear whether the plaintiff intends by such allegation to allege that she was unmarried in December, 1938, and at the time the unborn child was conceived. If that is the fact and if she can thus allege, I think she should have an opportunity to amend the second cause of action in that aspect.''

Thereafter, the child having been born in the meantime, the plaintiff mother, and as guardian ad litem of the child, moved the court for permission to file a ''PROPOSED SUPPLEMENTAL COMPLAINT BY MINOR CHILD FOR SUPPORT AND PROPOSED AMENDED SECOND COMPLAINT BY MOTHER FOR SUPPORT OF CHILD, under section 196a of the CIVIL CODE.'' This pleading, for brevity, will be referred to as the ''Supplemental Complaint.'' The first alleged cause of action is one for support for the child and hospitalization expenses for the mother. It alleges that plaintiff mother ''is an unmarried woman.'' It then sets forth that from August 11, 1934, to June 12, 1939, she was married to one Richard James Graham; that she lived

with him as his wife from August 11, 1934, to September 12, 1934; that they then separated and that at no time thereafter did she cohabit, come in contact with, nor even see him; that on the 13th day of June, 1939, she obtained a divorce from him because of his wilful desertion of her on September 12, 1934. She then alleges that the defendant is the father of the plaintiff child and sets forth facts showing the life of plaintiff mother and the defendant together, living as husband and wife, and other matters to prove that defendant is the father of the child. The second cause of action is likewise for support for the child, incorporates all of the allegations of the first cause of action and adds others of no great importance. The third cause of action is for seduction as of June 17, 1939, and thereafter, incorporates all of the allegations of the first cause of action, and alleges that at all times referred to in this cause of action she is unmarried "except as alleged." The fourth cause of action is for breach of promise of marriage, incorporates all of the allegations of the first cause of action and alleges that subsequent to the date of the divorce decree the defendant repeatedly promised to marry her.

The court denied the motion for leave to file the supplemental complaint. The question here is the validity of the court's order sustaining the demurrers to the amended complaint and its order denying permission to file the supplemental complaint. For clarity and convenience, the causes of action will be considered separately.

The first cause, that to determine the paternity of the child and for its support:—In the amended complaint, nothing was said as to the mother's marital status at time of conception, it merely being alleged that the mother "is an unmarried woman." It apparently was the theory of the defendant that in an action to establish paternity, there must be alleged facts which show that at the time of conception either the mother was married to the defendant, was unmarried, or if married to another that the situation negatives the presumption that the child is that of her husband. That this presumption can be overcome is the rule in California has been established by a number of cases, the latest being *Dazey* v. *Dazey*, 50 Cal. App. (2d) 15 [122 P. (2d) 308]. Apparently, the defendant relied upon some language in *Gambetta* v. *Gambetta*, 30 Cal. App. 261 [157 Pac. 1141], where the court discusses the difference between the remedies

provided for obtaining support from the father of a legitimate child and from the father of an illegitimate child. But the case does not bear the construction apparently placed upon it by defendant. In fact, it rather supports the theory of the plaintiff that the amended complaint, if not even the original complaint in the case at bar, is sufficient, for the court said (p. 264): "While, perhaps, the complaint, measured by the strictest rules of pleading, might be regarded as ambiguous and uncertain in the respect pointed out, still we think it can hardly be said to wholly fail to state sufficient facts. It is certain that it sets forth facts enough to enable the defendant to sufficiently understand the issues tendered by the pleading and to meet it by proper and full denials. Under the allegations of the complaint the defendant is the father of the plaintiff, and whether legitimate or illegimate, defendant is liable for his support."

Section 196a of the Civil Code expressly provides that the father of an illegitimate child is liable for his support and that an action for it may be brought by either the mother or guardian. Apparently no point was made in the lower court of the fact that the child was not in being at the time of suit, nor could such point be made in view of the provisions of section 270 of the Penal Code, which provides that such a child, for purposes of prosecution for failure to provide is to be deemed an existing person. *Kyne* v. *Kyne*, 38 Cal. App. (2d) 122 [100 P. (2d) 806] flatly holds that suit to establish paternity may be brought on behalf of an unborn child.

While the amended complaint might be uncertain upon the question of whether the child was an illegitimate or a legitimate child of the defendant, still there was a basic right to bring an action under either theory. Section 231 of the Civil Code provides than an action may be brought for the purpose of having declared the existence or non-existence between the parties of the relation of parent and child, by birth or adoption. If the plaintiff and defendant were married to each other at the time of conception, a cause of action would exist under section 231 of the Civil Code, if they were unmarried, then one would exist under section 196a of the Civil Code. If plaintiff were married to another and set up facts which showed non-access by her husband, there would likewise be a cause of action under section 196a. Therefore, at most, the complaint was uncertain as to which of the three theories plaintiff was claiming under, and thus, in any event, an opportunity should have been allowed to plaintiff to

amend to set up the true facts. This question is cleared up in the supplemental complaint, which clearly alleges that the child is that of the defendant, and although conceived during the period of the plaintiff's marriage with another man, sets forth allegations rebutting the presumption of parenthood by the husband. Thus, any uncertainty in the amended complaint could have been cleared up by the amendment, but the court sustained the demurrer to this count of the complaint without leave to amend. Society in general has an interest in a proceeding of this kind for it is extremely important that the true parentage of this child be determined so that the father, rather than society, be required to support it. Great liberality should be allowed in permitting by amendment the true facts to be set up so that this extremely important question might be determined by the courts. That there should be such liberality is indicated in the decision in *Sweet* v. *Hamilothoris*, 84 Cal. App. 775 [258 Pac. 652], where the court, commenting upon an amendment to the original complaint allowed by the lower court to clear up the question of whether or not the mother was married to a person other than the defendant at the time of conception, stated that amendments in such cases should be liberally allowed.

The court had jurisdiction at any time prior to judgment to reconsider its ruling sustaining the demurrer without leave to amend (21 Cal. Jur. 124; 9 Cal. Jur. 10-Yr. Supp. 221).

In view of the public interest in a proceeding of this kind, and the fact that great liberality of amendments in actions over the question of paternity of a child and its support should be allowed, the court having improperly sustained the demurrer without leave to amend should have allowed the plaintiffs to file the first and second causes of action of the supplemental complaint. At the time of the application to file the supplemental complaint, the child, which was not in being at the beginning of the action, had been born. The situation having thus changed, constituted an additional reason why the said pleading should have been allowed. It was an abuse of discretion not to permit an amendment or a supplemental pleading which would have brought properly before the court the true situation, in which society, as well as the child, have so vital an interest.

Second cause of action—seduction. In the amended complaint plaintiff states June 17, 1939, as the date of the actionable seduction, that is, as such complaint stood after

the court, on reopening the matter for further argument, had permitted plaintiff to strike out the references to paragraphs III and IV of the first cause of action which alleged acts of intercourse and cohabition beginning as early as December, 1938. Of course, with those allegations in the complaint, the allegation that on the date of the alleged actionable seduction, June 17, 1939, she was chaste and virtuous meant nothing. With them out, there was still incorporated by reference allegation V of the first cause of action, which set forth that defendant is the father of her child to be born on or about the month of December, 1939. Comparing June 17th as the date of seduction with the fact that a child is to be born six months later makes it quite uncertain how plaintiff can meet the first requirement of an action for seduction, namely, that she was chaste and virtuous at the time of the alleged seduction. The court also felt that there was ambiguity in the allegations as to her marital status and for that reason, in sustaining the demurrer, suggested that that matter be cleared up and granted time to amend. Only an unmarried female can be seduced. (§ 374, Code Civ. Proc.; § 286, Pen. Code; 57 C. J. 14.) Likewise, she must be chaste. (57 C. J. 14.)

As the amended complaint failed to clearly show that she was chaste at the time of the alleged seduction, the court was justified in sustaining the demurrer and would have been justified under the circumstances as disclosed at the argument to have denied plaintiff the right to amend. However, it granted an opportunity to amend. This plaintiff did not do directly, but indirectly through her application for leave to file the supplemental complaint. But in the proposed supplemental complaint, plaintiff did not meet the situation. She alleged, in addition to incorporating all of the allegations of her first cause of action, ''that plaintiff is at all times referred to in this said cause of action unmarried, except as alleged . . . and is chaste and virtuous.'' By the allegations incorporated by reference she alleges at considerable length her marriage, her divorce, the fact that she and the defendant had lived together as man and wife since December, 1938, and then attempts to charge seduction as of June 17, 1939, and approximately a month thereafter. Therefore, on the face of her proposed complaint it appears that she was not chaste and virtuous on the date of the alleged seduction, and there is no cause of action for seduction. Obviously, the court was justified in refusing to permit her to file a pleading

which not only does not state a cause of action but actually negatives one. Particularly is this so, in view of the attitude of the law towards this type of action. This suit was filed but a few days before section 43.5 of the Civil Code, recently enacted, went into effect. That section abolished entirely causes of action for seduction, breach of promise of marriage, alienation of affection, and criminal conversation. Appellant refers to *Carter* v. *Murphy,* 10 Cal. (2d) 547 [75 P. (2d) 1072], apparently as authority for the contention that the acts of unchastity of the plaintiff with the defendant occurring prior to June 17, 1939, which date plaintiff now chooses as the date of the actionable act of seduction, do not negative her right to bring such an action, because such prior acts occurred with the defendant and not with some other person. But the Carter case does not so hold. In that case the complaint alleged that the first act of intercourse occurred in September. At the trial plaintiff testified that the first act was committed in August. The defendant then contended that plaintiff was not chaste in September and that the cause of action thereby failed. Plaintiff asked leave to amend her complaint to set up the August date instead of September. The court held that that was not necessary for whether she was first violated in August or September made no difference as in either event, under the special circumstances of that case, the defendant was the original violator of her chastity. In the case at bar, assuming that a person having intercourse with someone else's wife may be considered the violator of her chastity, still, plaintiff is barred by law from claiming seduction for acts occurring during her marriage, and after the marriage bar is removed, and she continues to permit sexual intercourse, it can hardly be considered that because it is with the same man, plaintiff can claim herself to be chaste. Seduction imports the idea of illicit intercourse accomplished by the use of arts, persuasions, or wiles to overcome the resistance of a female who is not disposed of her own volition to step aside from the paths of virtue. (*Carter* v. *Murphy,* 10 Cal. (2d) 547 [75 P. (2d) 1072 at 1080].) It cannot reasonably be said that a married woman who violates her marriage vows by sexual relations with a man not her husband and then after the marriage is dissolved continues such relationship is not disposed of her own volition to step aside from the paths of virtue.

The third cause of action—breach of promise of marriage

—is in about the same category as the second cause. Here the plaintiff alleged that in December, 1938, she succumbed to the blandishments of defendant and his promises to marry her, and from there on until July 20, 1939, cohabited with him as man and wife. She then, by incorporation, repeats the paragraph in the second cause of action alleging acts of sexual intercourse on June 17, 1939, and for a month thereafter as being consented to by her because of defendant's repeated promises of marriage. Apparently it is intended to base this cause of action upon acts and promises of June 17, 1939, and thereafter, as of course, she could not legally base them upon acts or promises made her during her married life.

There are several things wrong with this alleged cause of action, first, she states, that she "is an unmarried woman," which would only apply as to her status at the time of filing suit. As under the law, there could be no cause of action for breach of a promise to marry a woman who is already married (11 C. J. S., 772), she should have alleged her lack of marital status at the times of the alleged promises. Secondly, there is considerable uncertainty in the way this cause of action is drawn as to whether plaintiff is suing on the promises which she alleges the defendant made in December, 1938, and which she alleges she agreed to, or the promises made in June, 1939, concerning the acceptance of which she is silent. As to these latter promises she does not meet the requirements of the cases which hold that the promise to marry must be mutual. (8 Am. Jur. 874; 11 C. J. S. 785.) On both these grounds the court was justified in sustaining the demurrer, and without leave to amend, because of the expressed attitude of plaintiff's counsel, as disclosed in the court's opinion, that plaintiff was not required to disclose her marital status at the times of the alleged promise of marriage, but only at the time of suit, and because plaintiff having had two opportunities to set up a cause of action, and having failed, the court, in view of the attitude of the law as expressed by the enactment of section 43.5 of the Civil Code was justified in refusing to allow another opportunity.

Plaintiff after having filed the original defective complaint was afforded an opportunity to cure the defects and failed to do so, not through inadvertence, but because plaintiff's counsel disagreed with the trial court in its interpretation of the law. In this respect the record shows that at the time the demurrer to the original complaint was sustained leave

was granted to amend. An amended complaint was filed, but admittedly it did not conform to the requirements specified by the trial court in granting leave to amend; and it appears from the written opinion which was later filed by the trial court that the failure to meet such requirements was not the result of inadvertence, but was due entirely to the position taken by plaintiff's counsel that the court was wrong in its construction of the law; whereupon the trial court sustained the demurrer to the amended complaint without leave to amend. Thereafter plaintiff was given a second opportunity to comply with the trial court's view, but again she failed to do so. After the demurrer to the amended complaint had been argued and sustained without leave to amend the trial court granted plaintiff's motion for leave to reargue the demurrer, and to that end it set aside its previous order sustaining the demurrer; and although on reargument plaintiff amended her second cause of action (for seduction) she made no attempt to cure the defects previously pointed out by the court in the cause of action for breach of promise to marry; consequently for the second time the trial court sustained the demurrer thereto without leave to amend. That order so made was entered on December 18, 1939, pursuant to the written opinion above mentioned. Meanwhile, and on December 11, 1939, the child was born; and on December 21, 1939, notice of motion was given for leave to file the supplemental and second amended complaint. ■ The child through its guardian ad litem was made party plaintiff to the action and joined in the motion; and attached to the motion was a copy of the pleading they proposed to file. It set forth four causes of action. The first and second were clearly of a supplemental character. The first was in favor of Meredith B. Davis and was substantially the same as the first cause of action previously pleaded by her except that it set forth the supplemental facts relating to the birth of the child and the medical and hospital expenses incurred at the time of its birth. The second was in favor of the child to establish its paternity and to compel defendant to support it during minority. But the third and fourth causes of action were purely amendatory in their nature. They were in favor of Meredith B. Davis and merely restated in somewhat different form the causes of action for seduction and breach of promise to marry. The motion for leave to file the proposed third complaint came on for hearing before a dif-

ferent judge and the motion was denied. In view of the foregoing state of the record as it was then presented to the second judge, it would be wholly unreasonable to hold that he abused his discretionary power in denying leave further to amend, even though the proposed third complaint may have stated a good cause of action, for plaintiff already had been given three opportunities to file a good complaint for breach of promise to marry and had failed, in fact on two occasions had declined, so to do.

Nor can it be fairly said that there is anything inconsistent or anomalous in drawing a distinction between the first two causes of action set forth in the proposed third complaint and the cause of action for breach of promise to marry. As stated, the first two causes of action covered facts purely of a supplemental character, namely, the circumstances attending the birth of the child, which of course could not have been set forth in the former complaints because the event had not yet happened. Those two causes of action were therefore governed by a different code section, to wit: Code of Civil Procedure, section 464. Moreover, they were causes of action having for their purpose the establishment of the paternity of an illegitimate child, and the responsibility for its maintenance and support; and as hereinbefore stated the public is inherently interested in actions of that class, in furtherance of which courts have shown much liberality in permitting amendments in order to accomplish the purposes for which the actions are brought. But certainly a personal action for the recovery of damages for breach of promise to marry does not fall in that class. Quite to the contrary, such actions continued to grow in such disfavor in this state that in 1939, California, like many other states, enacted a law abolishing the right to bring them. It is interesting to note that such law was enacted by the Legislature just prior to the commencement of this action, and that it became effective more than three months prior to the application for leave to file the third complaint. However, by virtue of the saving clause in the law, plaintiff's cause of action did not abate.

The lower court is ordered to permit the filing of the first and second causes of action of the supplemental complaint. In all other respects the judgment is affirmed.

Peters, P. J., and Knight, J., concurred.